W. F. CORNELL v. THE STATE.

1. CONVICTS. *Corporal punishment.* The manager of the lessee of convicts for misdemeanors cannot, of his own authority, award and inflict corporal punishment on one of the leased convicts for a refusal to work or for a violation of duty or good order.

2. SAME. *Same. Power of county court. Quere,* whether the county court, without express legislative authority, can authorize the infliction of such punishment.

FROM SHELBY.

Appeal in error from the Criminal Court of Shelby county.   L. B. HORRIGAN, J.

LUKE E. WRIGHT for Cornell.

ATTORNEY-GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

Cornell was indicted for assault and battery, tried by the court without a jury, by consent of parties, and convicted.   He appealed in error.

The trial was of two separate indictments upon an agreed state of facts.   Each of the persons assaulted had been convicted of a misdemeanor, and sentenced to confinement for a definite time at hard labor in the county work-house, and leased by the county, during that time, to Forrest & Richardson, under the act of 1875, ch. 83, to work on their farm.   The defendant

was in the employment of Forrest & Richardson, as their superintendent and manager, his duties being to supervise and direct the convicts in their work, see that they were humanely treated, and did their work in a proper manner, and to maintain order and discipline among them, and to conform to the rules and regulations prescribed by his employers, with the approval of the county court. One of these rules was: "Any neglect on the part of the convict to carry out the orders of the guard or failure to do the work according to instructions (unless in case of sickness), shall subject the convict to punishment to be inflicted by the warden, and shall not exceed fifteen lashes at any one time."

One of the convicts charged to have been assaulted, it was agreed, became, while under the charge of defendant, mutinous, and used insulting language towards defendant while engaged in superintending the convicts, and finally seized a gun and threatened to shoot defendant if he gave any further orders to the convicts, the defendant having said and done nothing to the convict except to reprimand him for not properly doing the work assigned. The other convict smuggled into the prison whisky, of which he and other convicts participated so freely as to become drunk, unfit for work, and mutinous. Under these circumstances, the defendant punished said convicts for their misconduct, with the approbation of the agent of the county court, duly appointed, under their contract with the lessees, to reside upon the farm and see that the convicts were humanely treated, and properly fed, clothed and

40—VOL. 6.

worked, and who was also appointed a deputy sheriff. The punishment consisted in striking each of said convicts, one of them nine, and the other seven licks on the bare back, with a leather strap about one and a half inches 'wide and eighteen inches long, having a short wooden handle thereto attached. The blows were inflicted with sufficient force to cause pain to the convicts, without drawing blood, and inflicted no injury beyond the pain attending the immediate infliction. The defendant acted from a sense of duty to suppress disorder, and maintain discipline among the convicts, " and further with the full knowledge and approbation of the said lessees, his said employers, and by their direction."

The agreed statement concludes thus: " There is no claim that the said Cornell, in whipping said parties, acted on provocation, but simply because the said convicts had been guilty of a violation of prison rules. The question being, did Cornell have legal authority, under any circumstances, to punish convicts by whipping."

The act of 1875, ch. 83, which makes provision for county work-houses, further provides that any person confined in the work-house may be compelled to work outside of the same, as the superintendent of the work-house may direct, and that such person shall be secured so as to prevent escape, and " also may be corrected and punished in a reasonable manner, if such person refuse to work as ordered, or be guilty of gross violation of duty or good order." The act authorizes any person to bail a convict by entering into

a recognizance or bond to pay the fine and costs in a given time, it being made the duty of the superintendent to see that convicts in the employment of bailees be treated without cruelty, and in accordance with the dictates of humanity. Section 15 of the act is in these words: "The chairman or county judge, by authority of the quarterly county court, may hire out any or all of its misdemeanor convicts in the same manner, and subject to the same rules and conditions herein prescribed for bailing convicts, and the person or persons to whom said convicts shall be hired shall have all the rights, powers and privileges, and be subject to all the restrictions, duties and liabilities herein given to and imposed on said bailee and superintendent." Section 18 contains this clause: "All persons sentenced under the provisions of this act shall be kept at continuous hard labor during the day, except while eating or preparing their food; and no communication shall be allowed between them and any other person, and all intercourse between themselves shall, as far as practicable, be prevented."

There can be no doubt that the main purpose of the act was to keep the convicts in question at continuous hard labor at a certain price, as a punishment and a means of securing the fine and costs, and, to ensure this purpose, the act provided that the convict might be punished in a reasonable manner for a refusal to work, and for gross violations of duty or good order. The acts of both of the convicts assaulted were clearly violative of duty and good order, and interfered with the proper performance of the labor required from each.

The punishment seems to have been inflicted without anger, and for the sole purpose of securing good order and proper subordination. And if corporal punishment can be inflicted at all by the manager of the lessee, upon his own motion, with the consent of the agent of the county court, the punishment cannot be said to have been unreasonable.

Neither the act of 1875, nor the Code, in that part of it which treats of houses of correction or work-houses (Code, sec. 5410 *et seq.*), says anything about the character of punishment which may be inflicted on a convict to secure the performance of labor, or to punish violations of duty or good order, nor the offi-cial by whom the punishment shall be assessed. The Code, sec. 5410, confers upon the county court, or the authorities of any corporate town, providing work-houses, the power to appoint suitable persons for their management, and to "make all necessary by-laws and regulations for the government of the inmates, and cause the same to be enforced." Section 5411 is: "In no case shall the punishment inflicted in said work-house exceed hard labor." The Code, in the analo-gous case of the State penitentiary, confers upon the inspectors of that institution the power to make rules and regulations for the internal police and government of the prison, and for the direction of the officers in the discharge of their duties: Code, sec. 5455. The Code further provides that any convict who neglects or refuses to perform the labor assigned him, or vio-lates any regulation of the penitentiary, may be pun-ished by solitary confinement for a period not exceeding

thirty days for each offense, at the discretion of the keeper or person acting in his place, the punishment consisting in shutting him up in a cell, and feeding him with bread and water only during the confinement, unless the physician certify to the keeper that the health of the convict requires other diet: Code, secs. 5518, 5519. Code, sec. 5520, is: "No convict shall be punished in any other way than is herein provided, except by the authority of the board of inspectors."

The common law undoubtedly considered corporal chastisement by the infliction of blows on the bare back as one of the ordinary modes of punishment, and such punishment has been held not to be within the prohibition of our State constitutions against cruel and inhuman punishments: *Commonwealth* v. *Wyatt*, 6 Rand., 694. Our sturdy ancestors not only allowed it in the case of criminals, sailors and soldiers, but considered it a proper discipline for their wives and children. Its infliction, for the preservation of order among prisoners, seems to have been entrusted to the jailors: 1 Bac. Abr., Tit. Assault and Bat. (B. 2) C. And to the keeper of alms-houses for the preservation of order among the dependent poor: *State* v. *Neff*, 51 Ind., 516.

It cannot be denied, however, that this form of punishment has fallen under the ban of modern civilization, as tending to degrade the individual and destroy the sense of personal honor. It has been banished in this country from the army and navy, and is no longer treated as an ordinary mode of punishment even for high crimes. And whatever may be the rule else-

where, the tendency of legislation and public sentiment in this State are against it. Even in the case of the convicts in the penitentiary under conviction of felony, there is no express warrant by statute for its infliction, and it is clearly not permissible "except by the authority of the board of inspectors." No keeper of the penitentiary, or other person acting in his place, can inflict it of his own motion. It would be strange if a harder measure of punishment could be meted out to misdemeanor convicts, whose term of hard labor is often due more to their inability to pay the fine and costs, or costs alone, than to the degree of guilt. The language of the law should be very clear to admit of a discrimination against that class of criminals.

We think it very clear, if corporal punishment can be inflicted at all, without the positive sanction of the Legislature, for refusal to work and violation of duty, it can only be under or by a law or regulation made for the government of the convicts by the county court in due form, at a regular session, or the governing authorities of the corporate town by whom the work-house has been established. It cannot be inflicted by the superintendent or lessee except by virtue of, and in accordance with such a rule or regulation. It cannot be awarded at all by the agent or manager of the lessee. It is the lessee alone who is clothed with the "rights, powers and privileges" of the superintendent. The statement of facts in this case is so worded as to show, that while the regulations of the lessees may have been made "with the approval

Cornell *v.* The State.

of the county court," they were not made by that court, and that while the punishment may have been inflicted "with the full knowledge and approbation of the lessees," it is fairly inferable that the punishment was not awarded by the lessees, nor executed in their presence.

The verdict of guilty was, therefore, warranted by the facts, but the punishment assessed by the trial judge was in excess of the offense committed. It is very clear that the defendant acted only from a sense of duty, and under the honest belief that the form of punishment was authorized by the county court, and approved by the lessees. The prisoners chastised deserved punishment, and the dignity of the State does not demand severity in a case where the proper line of duty was left so uncertain by the constituted authorities. We do not often interfere with the punishment awarded by the court below, but this is an exceptional case. The judgment will be for one cent fine and costs, without further penalty.